## Harrisburg City Pass. Ry. Co. *v.* City of Harrisburg et al., Appellants.

*Street railway—Extension of tracks—Interference with—Preliminary injunction.*

The plaintiff in this case, claiming a right under its charter granted prior to the constitution of 1874, to extend its tracks and cross a bridge over the tracks of a railroad, and that the councils of the city had unreasonably delayed approval of the manner of such extension, began the work of extension; and, being interfered with by officials of the city of Harrisburg, filed a bill and obtained a preliminary injunction against such interference upon filing a bond to idemnify the city against charges which it might be compelled to bear by reason of plaintiff's occupancy of the bridge. On appeal the decree was affirmed.

Argued March 11, 1892. Appeal, No. 2, May T., 1892, by defendants, the city of Harrisburg and John A. Fritchey, mayor, and D. W. Seiler, highway commissioner, from decree of C. P. Dauphin Co., No. 146, equity docket, enjoining defendants at the suit of the plaintiff. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill for an injunction to restrain defendants from interfering with plaintiff in the making of an extension of its railway.

A preliminary injunction having been granted on the filing of the bill, the case was subsequently heard upon bill and affidavits, and the injunction continued. The court by W. F. SADLER, P. J., specially presiding, filed the following opinion:

" The Harrisburg City Passenger Railway Company, on the 25th inst., commenced the extension of its tracks on Race street, in the city of Harrisburg. The progress of the work was interrupted and stopped by the officials of the said city. A bill. in equity was then filed by the railroad company, in which complaint was made that its employees had been compelled to cease the prosecution of its undertaking, and praying that an injunction might be awarded against further interference with the proposed addition to its road.

" At the hearing it appeared that the Harrisburg City Passenger Railway Company was incorporated by an act of assembly approved the 1st day of May, 1861. P. L. 1865, 871.

" It thereby became empowered to ' lay out and construct one

or more railways, with double or single tracks, with turn-outs, commencing in Market square, in the city of Harrisburg, and extending to any point within said city, for which purpose they are hereby authorized to occupy any of the streets of said city now opened or which shall hereafter be opened, . . . . and the said company shall have power to convey passengers and all kinds of produce over said routes, . . . . also to purchase the necessary equipments, such as horses, cars and other vehicles, for the conveyance of passengers or produce over said railways.' The power by which the cars are to be moved is not designated unless it be said to be inferable that of animals was contemplated, because authority was given to purchase horses.

" By an ordinance of the city of Harrisburg, approved Nov. 26, 1890, the complainant was authorized to lease or erect poles, properly painted, and necessary appliances for the use of electricity. The condition upon which this ordinance was to become operative appeared on the argument to have been substantially complied with, and in pursuance thereof the entire railway of the plaintiff was equipped with electrical appliances, and is now operated by electricity.

" On the 6th day of June, 1884, it was by an ordinance passed that day, by the city, made incumbent upon ' every passenger railway desiring to lay its railway in any highway of the city, or to change or extend its routes, to first submit to its councils for their approval, detailed plans of its proposed work, exhibiting the streets to be occupied, the character of the material to be employed thereon and the kind of rails proposed to be laid. . . . Also that it shall not be lawful for any company, person or persons to construct, extend or change the route of any passenger railway track or to open any streets or place any material thereon for the purpose of making any such construction or extension without first having obtained in the manner provided by this ordinance the approval of said plans, kind of rail and character of material to be used in such construction or extension by the councils of the city, to be expressed by ordinance so as to provide for the reasonable protection of the public having concurrent rights with such company in the use of the streets of the city.'

" On the 25th day of May, 1891, the complainant presented to the city councils a petition representing that it had arranged

to extend its tracks from the present terminus thereof near the foot of Race street, through certain streets and over Dock street bridge to Cameron street, and there to connect with the tracks of the East Harrisburg Passenger Railway Company. The kind of rail to be used was set forth and the manner in which its tracks were to be supported and cross sections of the work proposed to be done submitted, and prayer was made for the approval of the same.

"A second communication was addressed to the said councils on the 27th day of June following, calling attention to the petition presented and requesting early action upon it.

"The prayer of the petitioner was not granted, and on the 30th of June action on the same was indefinitely postponed, the councils, on the 6th of August, adjourned until September 25th.

"The plan of the proposed construction was identical with that in use on the other streets of the city occupied by the railroad.

"A number of affidavits were filed on part of the defendants, on the day of the hearing, which set forth in substance, that the Harrisburg City Passenger Railway Company has been leased to the East Harrisburg Passenger Railway Company, and that the road of the former has been operated by said lessee for some months last past. That the horses and cars of the said Harrisburg City Passenger Railway Company have been sold and that it has ceased to do business as a carrier of passengers. It is also stated that from the 25th day of May, 1891, an ordinance was presented to the city councils which was finally passed and approved June 10th following, which authorized the East Harrisburg Passenger Railway Company to extend its tracks over the same streets and bridges on which the Harrisburg City Railway Company is now attempting to place its tracks, but that the said East Harrisburg Railway Company refused to comply with the conditions imposed by the ordinance and notified councils of the fact and that it would not construct its road under the same.

"It is further averred that the object of the Harrisburg City Railway Company in extending its roadway is not for the purpose of operating the same, but solely with the design of turning it over to the said East Harrisburg Passenger Railway Company, and thus enabling the latter to escape the conditions

imposed upon it by the ordinance referred to, and that the plans presented to council are the same as that on which the road is being constructed. The allegation is also made that the Harrisburg City Railway Company had not appropriated any money, furnished any material or employed any workmen to extend its line, and that the persons engaged in the construction are employees of the East Harrisburg Passenger Railway Company. It is also stated that an arrangement was made between certain officers of the East Harrisburg Passenger Railway Company and the Mayor and other officials of the city, that before any new work should be undertaken that he, the mayor, and the commissioner of highways should be notified. From the affidavits of several members of the councils, it is shown that the reason why favorable action was not had on the request of the Harrisburg City Passenger Railway Company, was because the latter had leased its road and had ceased to operate it.

" The averment is made that no ordinance has been passed whereby the Dock Street bridge is made a part of any street of the city, while on the argument of the case it was urged that its use by the railroad would entail additional expense on the city for its repair and maintenance.

" There was no denial that the complainant was possessed of the corporate power claimed in its bill, and that application had been made to councils by it under the provision of the ordinance of 6th of June, 1884, was admitted.

" There was no affirmation that travel on the streets would be obstructed, hindered or impeded by the construction of the railway—their usefulness impaired, or that any loss or injury would be caused to the municipality, except in matter of Dock Street bridge.

" There is no pretence that the building of the complainant's railway would result as a nuisance, if constructed, as proposed. Dock Street bridge, after its erection, was turned over to the city and adopted by the latter as one of its streets or highways and opened to the use of the public. It is not material whether it was formally declared to be such by an ordinance or not.

" From the affidavits of the presidents of the two passenger railways, it clearly appears that the work was being done by the Harrisburg City Passenger Railway Company. That it employed workmen of the other corporation to make its extensions does not alter the case.

" It is manifest that the councils were, by the petition of May 25, 1891, fully made aware of the kind of rails and character of material which the complainant proposed to use in extending its road. It was known that it was proposed to operate the same by electricity. Its old roadway had been adapted to this end. The failure to refer to and describe certain wires used in connecting the rails, running along the same, or extending through them by tubes into the earth was not material. The ordinance was designed to bring to the attention of the city officials such matters as would be likely to affect the street as a public highway. Besides, no objection was made by the councils that the kind of materials to be used was not set forth with sufficient detail, but the ordinance was refused because the road had been leased and was no longer operated by the complainant.

" The fact that the East Harrisburg Passenger Railway refused to build a roadway under the conditions imposed by the ordinance of June 10th, does not militate against rights of the other company, nor because the complainant has leased its road has its right to extend the same under its charter been forfeited.

" The commonwealth under the act of May 1, 1861, before referred to, authorized the Harrisburg City Railway Company to build its railway upon any of the streets of the city of Harrisburg then opened, or which might be thereafter laid out. The grant to do so is not conditioned upon the assent of the two councils of that municipality. That the railroad is not subject to the constitution of 1874 nor to the subsequent legislation, which provided that ' the construction of street railways shall be subject to the consent of local authorities,' has been settled by the eminent and learned president judge of this district in the case of the Harrisburg City Railroad v. Fritchey et al., No. 125, equity docket. The right of the plaintiff, therefore, to extend its tracks over the streets in contention is not dependent upon the will of the municipal authorities. Williamsport Passenger Railway Company v. Williamsport, 120 Pa. 1 ; Borough of Millvale v. Evergreen Railway Company, 131 Pa. 1. It is true that the Railroad Company took the privilege to build and operate its railway ' subject to such reasonable regulations as the city might enact for the common good of all those who might travel its streets : ' Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 318 : Frankford and Philadelphia Pas-

senger Railway Company v. City of Philadelphia, 58 Pa. 119.
It is also the law that, when a corporation accepts the grant of
a franchise upon a highway over which a municipality possessed
a general power of regulation and control for public purposes,
it accepts its special privileges upon the implied condition, that
they shall be held subject to the reasonable and necessary ex-
ercise of the general powers of the municipality: West Phila-
delphia Passenger Railway Co. v. City of Philadelphia, 10
Phila. 70. But while regulations may be thus imposed upon
the exercise of its franchises of a passenger railway, occupying
the streets of a city or borough, they must be reasonable in
character. Ordinances which conflict with the statutes of the
commonwealth are invalid. They must not attempt to nullify
corporate rights. They should have in view a common benefit.
When ordained with reference to a street or highway they
should have due regard for all who may use it. Street cars are
now as clearly recognized as vehicles for the transportation of
persons over the highway of a city as hacks or omnibuses.
Much travel is thus cheaply and conveniently provided for.
The occupancy of streets by passenger railways has been found
to be not incompatible with their use for ordinary purposes,
therefore, when ordinances regulating the same are passed due
consideration should be given to the whole public, those who
use the cars as well as others. The ordinances of municipali-
ties which are unlawful or unreasonable or oppressive or not
impartial have been declared by courts of competent jurisdic-
tion to be void: Dillon on Municipal Corporations, vol. 1, pages
368–370 and case cited in notes.

"It need hardly be remarked that if the city of Harrisburg
cannot directly prevent the exercise of the rights guaranteed
to the complainant by its charter, it cannot accomplish this in
an indirect manner. If it cannot by ordinance prevent the oc-
cupancy of its streets by the railway company, it cannot provide
that the railroad shall not be built or extended until plans are
presented and approved, and an ordinance passed expressive
of assent, and then refuse to pass such an ordinance or unrea-
sonably delay its passage, unless valid objections appear in the
plans.

"Conceding that the requirements of the ordinance of June 6,
1884, are reasonable, yet it will surely not be contended that

the councils thereunder may act in an unreasonable and arbitrary manner toward those who may in good faith seek the benefit of its provisions. It must be borne in mind that the complainants presented their request for an approval of the style of rail proposed to be used and plan of construction to councils on May 25th, that no objection was made that the same would obstruct the streets or was in any respect not satisfactory. They have merely refused'to act for the reason, it would seem, that the complainant had made a lease of its road, although even this objection does not appear to have been communicated to the latter until the hearing. If this could be lawfully done, the rights conferred by the commonwealth on the Harrisburg City Passenger Railway Company can be rendered of no effect. This will not be permitted. If such action be justifiable under the ordinance of June 6, 1884, then the said ordinance would be void unquestionably, and might be disregarded; if otherwise, then the railway, after complying on its part fully with the requirements of said ordinance, and hearing no objections from councils, might after reasonable opportunity given for investigation and action by the councils infer that its plans are satisfactory and have been approved, and proceed with the construction proposed.

" Again in so far as the right to equip the same with 'insulated wires and necessary electrical appliances' is concerned it seems to have been conferred on the complainant by the ordinance of November 29, 1890, heretofore referred to. Until this ordinance is repealed it may be treated as obligatory upon the authorities of the city and prevent them, unless through the intervention of the courts, to obstruct the construction so authorized.

"Besides, we are inclined to the opinion that under the determination in the Easton Passenger Railway Co. v. Easton, 133 Pa. 505, the complainant is also entitled to the relief prayed for. An ordinance of that city provided that it should be the duty of all passenger railway companies to 'submit all proposed plans, courses, styles of rails and the manner of laying the same, either as to repairs, extensions or constructions of such railway, to the highway department for their approval and sanction, which shall be obtained before they proceed to make such repairs, break ground, or occupy any of the streets,

roads, avenues or alleys within the limits of the city.' The railway company had originally laid its track with flat rails. Without complying with the provisions of this ordinance it relaid in 1888 a portion of its track with 'T' rail. A portion of its track having been taken up by the city in making repairs to a bridge over which its roadway crossed, the company relaid the same with 'T' rail without complying with the ordinance referred to, and even after notice from the commissioner of highways not to do so. The authorities of the city thereupon undertook to tear up the same but were finally restrained. If the officials of that city under the circumstances were properly enjoined, it would seem that in the present case, where the proposed construction was identical with that in use in other streets of the city under the sanction and approval of its authorities, and the railway company having substantially complied with the requirements of the ordinance of the city of Harrisburg, and no objection having been made to the plan, and three months having intervened without any action on part of councils, and the complainant having commenced to extend its road, the city authorities may be properly restrained from interposing obstacles to such extension. The rights of the parties in the present contention should be settled as suggested by Justice PAXSON in the case last cited.

"In order that the city may suffer no damage by reason of the construction of the railway over Dock Street bridge, and in order that no additional burden may thereby be imposed upon it in the future, the complainant should give a bond in the sum of five thousand dollars to indemnify it, the city, from all charges which it may be compelled to bear by reason of the occupancy of said bridge by the said Harrisburg City Railway Company, the complainant.

"Let this be done and the injunction against the defendants will be continued until final hearing or the further order of the court."

*Errors assigned* were (1) awarding the injunction; (2) continuing it, and (3) not dissolving it.

*Thomas S. Hargest* with him *John E. Patterson*, city solicitor, for appellants.

*Samuel J. M. McCarrell* and *Robert Snodgrass*, with them

*Charles L. Bailey, Jr.,* for appellee.—The work in question has been completed under the protection of the injunction, and the case is proceeding in a regular and orderly way to a final hearing, on which the rights of all parties will no doubt be clearly considered and settled.

PER CURIAM, April 18, 1892:

This was an appeal from the decree of the court below continuing a preliminary injunction.

The decree is affirmed and the appeal dismissed at the cost of the appellants.